We will move ahead to case number 6 at this point. I understand we have some technical issues. So case number 6 is appeal number 19-1818, Jimmy Powell v. Troy Hermans. And in just a moment, we will have the lawyers. All right, Mr. Fresina, Mr. O'Neill, can you both hear me? Yeah, I'm listening. All right, excellent. So we will start with you, Mr. Fresina. Sorry about that. I had my audio off. You may proceed. Thank you, Your Honor, and may it please the court. The issues before us today have already been decided by this court. Failing to object to a jury instruction that misstates the law is deficient performance. And here the district court found that the jury instruction was misleading, if not actually erroneous. Further, failing to object to a jury instruction that prejudices your client is not a strategic decision that's hidden from review. And surely here there is prejudice, because as the state points out on page 32 of its brief, unquestioningly, the evidence presented at trial could have allowed the jury to find that Mr. Powell did not act with utter disregard. This is both prongs of Strickland, and the Court of Appeals' decision to the opposite is an unreasonable determination of the facts and an unreasonable application of Strickland. And one, it didn't really even apply Strickland to counsel's behavior. It just sort of decided this is what they were talking about. And two, that decision is not supported by the plain language of the record. Mr. Cusino, let me alert you to something that troubles me about this. The jury asks their question. We're not so worried about the definition of utter disregard for human life, because the court just says I've already told you about that. But then they say, is there a time element associated with the utter disregard, paren, before, during, after? And here's where I'm kind of stuck. I'm not at all sure that the state court interpreted that jury question the way the jury meant it. They seem to think it has more to do with conduct that's at issue as opposed to timing. But in some ways, my question for you is, so what? I mean, the worst that happened is the jury got an unhelpful supplemental instruction, and the state courts themselves don't think that this had any impact on the outcome of the case. If we were hearing this on direct review, maybe we would need to take a closer look at it, but this is layered upon layered with AEDPA deference. So even if on the spot the court didn't quite understand what the jury was getting at, what's the harm? The harm is that they were precluded. The harm, Your Honor, is that they were precluded from viewing evidence that could actually exculpate Mr. Powell here, that they were not able to view because they call utter disregard calls for totality of the circumstances consideration. Here they're limited to only looking while he's in the car, but this excludes behavior that he was assaulted, that a knife was pulled on him, that he came back, he was fleeing this captive. Those things go into finding that there's not utter disregard. And because of that, if there's not utter disregard, this man wouldn't be in prison right now. He would have had a significantly shorter sentence, and that's the harm, that he was prejudiced. I mean, you've presented one point of view, but the jury also had before it, you know, a different point of view about his actions both before and after. And let me just throw two more things into the mix. Number one, the testimony of the lawyer who actually thought that he might be better off without having the jury think about his behavior earlier and later. And also, you know, his account is not something that they had to believe, and the jury had a lot of other instructions as well. So why should we take this one in isolation? It's not so much taking it in isolation, Your Honor, but it follows this court's decision in Kubat v. Theriot, where you have more than one instruction on the same matter, and they conflict. Here we have apparent jury confusion from two questions back to back about this element. The response they get is non-responsive. It's an incorrect statement of the law. And this court found that even if one juror is confused,  so here, because there's other instructions that conflict with this one, and they should conflict with this one because this one is an unlawful statement, that we have confusion and we have prejudice. And to answer your point about trial counsel's testimony, one shows that the court of appeals' decision is an unreasonable determination of the facts. Trial counsel's testimony there is clearly at odds with what the injury-causing conduct determination. They're saying here, you know, I knew it was limiting. I knew it allowed them to only consider this circumstance. That's not what the law says, and that's prejudicial, too. And as this court stated in United States v. Cates, there's no conceivable strategic reason to agree to a jury, to not object to a jury instruction that misstates the law. And not misstates the law, sorry, that prejudices your client. And here we have that prejudice, that it didn't allow them to be. But that's not what the state court found. They found, based on the trial attorney's statement, that it was reasonable to think that it could have actually helped him because it limited the time period to when he was in the car as opposed to the evidence that the victim had his neck cut and the argument that Powell could have gone back and driven back and done that. So it took that out of the calculation by saying that they had to look at just what happened in the car. Again, we have to defer here, and that's what the Wisconsin Court of Appeals found. Why is that wrong? It's incorrect, Your Honor, because it doesn't accurately reflect how the law works. It's a misstatement of law, and this court has said agreeing to a misstatement of law is deficient performance. And that's just the matter here. What if the misstatement is helpful to him? Well, that goes to prejudice, and that's a different matter altogether. Here, on the first prong of Strickland, it is almost per se deficient performance. The fact that he is prejudiced by not being able to consider these other activities outside of that, it shows that it's not even a reasonable strategic decision because this court, again, in case said that that's not the case. You also have to think about here, over the four-day period of the trial, he began by saying, I want you to remember that Mr. Powell was assaulted. He did not act with utter disregard. In his closing, he said again, he did not act with utter disregard for human life. But here, he throws that away to have them considering the totality of the circumstances. But, you know, the interesting thing is the jury seems itself to have compartmentalized all of this in a way that maybe was helpful. He's acquitted on the attempted first-degree intentional homicide. He's acquitted on the attempted robbery. So the jury seems to be, you know, trying to match his behavior at the different moments during this unfortunate encounter to the legal standards. Yes, Your Honor. But those acquittals actually go to show prejudice and to show deficient counsel, in effect, of assistance of counsel. And that's consistent with this court's decisions in Kubat and this court's decisions in Cates. The fact that he was acquitted on these other ones go to show that there was something wrong here because, as this court said in Cates, the fact that he was acquitted on the other two shows that they weren't buying the state's story. So to have the misstatement of law here shows how ineffective it was. It shows the prejudice as well. And if there's no other questions from the court, I'd like to reserve the rest of my time for rebuttal. All right. Thank you. Mr. O'Neill. Thank you, Your Honor. Assistant Attorney General Aaron O'Neill on behalf of Warden Troy Herman. This court should affirm the district court's decision denying habeas relief because the petitioner has not shown that his trial counsel performed efficiently or that he was prejudiced by his counsel's actions. With respect to deficient performance, counsel wasn't deficient here because he made a reasonable strategic decision to agree to the trial court's answer to the jury's question. Counsel concluded that it was to Powell's advantage to limit the jury's consideration of the reckless injury charge to the specific act of Mr. Powell running over the victim. So could I push back on that a little bit? I think what Mr. Powell is trying to say is if the jury had been encouraged to revisit Powell's account of all of this, you know, the assault from the victim and knives and all the rest of it, it may have seen this more in a self-defense light as opposed to an utter disregard light. And that could have led to either the lesser-included offense or maybe even an acquittal. This court has to assess what counsel decided to do at the time counsel decided to do it. And at the time counsel decided to agree to this answer, you know, he didn't know what exactly the jury was asking. Even, you know, taking Mr. Powell's interpretation that the jury was specifically asking about utter disregard, counsel didn't know whether the jury was looking at that in a way that was helpful to his client's case or in a way that was negative to the defendant's case. As I think you pointed out, Judge Wood, earlier, there was plenty of evidence that could have shown from the actions before and after that Mr. Powell acted with utter disregard in relation to his running over the victim. So at the time counsel decided that, he was not sure, you know, what to think the jury was actually asking, whether it was beneficial or detrimental to his client. So counsel made a reasonable decision here and decided to go with what he thought was best, which was limiting the information that the jury could consider. And he did that because, as counsel explained at the post-conviction hearing, he thought that that was the most defensible part of the case that he had. Can I ask you, as a matter of Wisconsin law, if the act that we're worried about is Powell in the car running over the victim, so the actus reus, you know, does the mental state have to exist at the same time? Does he have to be sitting at the steering wheel thinking, now I'm going to, you know, recklessly run over this Mr. Rabe, the victim? Or can the mental state not correspond to the time when he's actually carrying out the crime? My understanding is that the mental state has to relate to when the defendant takes the action. So Mr. Powell, when he decided to get in his car and drive off, he had to be aware at that time that he was engaging in criminally reckless behavior, that his behavior could, you know, he was aware that the conduct could cause, the way state statute defines it, is cause death or great bodily harm to the victim. Counsel here did not abandon Mr. Powell's key defense when he made this decision. Counsel's defense to the reckless injury charge was that this was an accident. The accident defense on a reckless injury charge or any reckless crime negates the mental element of the crime. It shows that the person didn't act with criminal recklessness. And that was really the main defense here. There wasn't a defense that, counsel did get a lesser included offense instruction on second degree reckless injury, which is the same as first degree without the utter disregard element. But there was never an argument by counsel. Well, if you think my client acted recklessly, find that he didn't act with utter disregard. That was never the defense here. The defense was always that this was an accident. And even though counsel, you know, mentioned in his opening and his closing argument that, you know, he brought up the language of utter disregard, if you read those comments in context, I think it's pretty obvious that counsel was really just saying that his client acted accidentally when he ran over the victim. Briefly on prejudice. Even if even accepting Mr. Powell's interpretation of this instruction, I don't think that there's any prejudice here because I think it's pretty clear from the record that the jury would have still convicted Mr. Powell of first degree reckless injury, even had they gotten a proper instruction. And important to that is that the jury, even after hearing this instruction, even if we can assume that the jury was confused by the instruction or thought it could only consider the specific act of running over the victim when assessing utter disregard. It's still found that that act showed that he acted with utter disregard for human life. There really isn't a whole lot of other evidence in the record that would tend to negate that finding. Certainly nothing. I don't think the jury rejected the act, the accident defense, which I think shows that it rejected the idea that Mr. Powell had to get away from this fistfight and only accidentally ran over the victim. With the door open, right? With the passenger door in the car open? Correct. Yeah, right. Yeah, I guess is what his theory was led to the neck slashing. Right. That's correct. Yeah. Yes. And. And also, just I really want to just last comment will be his actions after the fact also didn't tend to negate, negate the utter disregard element. Mr. Powell returned to the scene, but by his own admission, he interfered with the victim's friends attempt to call 911 to get help. And then he immediately left again. He never turned himself into the police for the crime. And in fact, I think that the record shows that he got rid of the car that he used to run the victim over. So even had the jury been properly instructed, it would not have found that Mr. Powell did not act with utter disregard here. Unless there are any further questions, I ask this court to affirm the district court's decision. All right. I see none. So thank you very much, Mr. For seeing anything further. Absolutely. Your Honor, just a couple of things. Counsel said that he threw away the most defensible part of the case. But here again, he did mention utter disregard in the both his opening and his close in under this court's decision and U.S. X. Bernard V. Lane, you counsel cannot you can't call it a strategic decision. If counsel throws away a defense at the last hour, hoping that the jury is going to misapply the law. And that's exactly what he did here. You can see it in his testimony, his post conviction testimony that I saw this is limiting. I want I didn't want them to consider these things, but those are the totality of the circumstances. It requires them to as to to accident. Accident goes to a main defense of whether he acted criminally reckless. But that doesn't talk about utter disregard. So while that may have helped him, the fact that the jury did not find him that he acted with accidentally does not mean that they also had to find that he acted with utter disregard. Those are two separate facts, two separate analyses that are at play here. The other thing that we'd like to point out is that this can't be a reasonable decision based on the language in case there is prejudice here because it precluded the jury from considering the totality of the circumstances. The state admits itself that there was evidence here that Mr. Powell did not act with utter disregard that the jury could have found this. This is exactly the point. And then here, even if the supplemental instruction had some benefit to to Mr. Powell, it muddled the jury and made it the jury's understanding and made it impossible for them to actually draw down the conclusion that they were given based on this instruction. So if there are no further questions from the court, I'd ask this court to overturn the district court's opinion and order it to issue a writ of habeas corpus. All right, well, thank you. And we thank you as well for accepting the court's appointment in this case. It's a great benefit to us. Thanks as well to the state. We will take this case under advisement and the court is going to take a brief recess.